# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TODD A. BROWN, | : | CIVIL ACTION NO. 3:16-cv-1886 |
| Plaintiff | : | |
| | : | |
| v. | : | (Judge Munley) |
| | : | |
| WARDEN DWAYNE L. BLACK, | : | |
| LT. DANIEL R. WEIKERT, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Todd A. Brown ("Brown" or "Plaintiff"), at all times relevant a pretrial detainee incarcerated at the Huntingdon County Prison, Pennsylvania, commenced this civil rights action pursuant to 42 U.S.C. § 1983 on September 14, 2016. (Doc. 1). Currently pending is Defendants Warden Duane L. Black ("Black") and Lieutenant Daniel R. Weikert's ("Weikert") Motion (Doc. 43) for Summary Judgment, filed on March 1, 2018, seeking an entry of judgment on the sole remaining claim, a Fourteenth Amendment Conditions of Confinement claim.

On March 21, 2018, Brown sought (Doc. 48) an additional sixty days to respond to the motion. The Court afforded him until May 16, 2018. (Doc. 50). At that time, the Court cautioned him that his failure to file an opposition brief and statement of material facts would render the motion unopposed and would result in an admission to Defendants' statement of material facts. (Id.) He has neither opposed the motion nor sought an extension of time in which to do so. The motion is unopposed and the

statement of material facts is deemed admitted. For the reasons that follow, the Court will grant Defendants' motion.

I.      **Summary Judgment Standard of Review**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id.; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Orson, Inc. v. Miramax Film Corp.,79 F.3d 1358, 1366 (3d Cir. 1996). Once such a showing has been made, the non-moving party must go beyond the pleadings with

affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56; Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); Wooler v. Citizens Bank, 274 F. App'x. 177, 179 (3d Cir. 2008). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" Picozzi v. Haulderman, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

II.     **Statement of Material Facts**

"A motion for summary judgment filed pursuant to FED. R. CIV. P. 56 shall be accompanied by a separate, short and concise statement of the material facts . . . as to which the moving party contends there is no genuine issue to be tried." See L.R. 56.1. The opposing party shall file a separate statement of the material facts as to which it is

contended that there exists a genuine issue to be tried. Id. "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Id. Because Brown failed to oppose Defendants' statement of material facts, all facts contained therein are deemed admitted.

Brown was admitted to the Huntingdon County Prison following incidents that occurred on or about February 17, 2016, while he was incarcerated at the Centre County Correctional Facility. (Doc. 45, ¶ 9). Brown alleges that while he was housed in a holding cell between the dates of June 18, 2016, and June 21, 2016, Defendant Black "neglected [his] well-being" when he allowed Brown to bang his head against the cell wall and there was "blood everywhere." (Doc. 1, p. 4, ¶ 4). Defendant Black allegedly stated that he did not care if Brown hurt himself. (Doc. 1, "Statement of Claim" Section, p. 2, ¶ 1). Black allegedly gave orders that Brown "receive nothing" and, thereafter, between the dates of June 18, 2016, and July 5, 2016, "neglected [his] basic elements of life" in refusing him toilet paper, razors, soap, shampoo, toothpaste, a toothbrush and a working toilet, denied him a cell with proper ventilation, and denied him adequate cell lighting. (*Id.* at Statement of Claim" Section, p. 2, ¶ 1pp. 4, 5, ¶¶5, 6, 8). He also alleges that Defendants Black and Weikert deprived him of recreation for a sixteen-day period. (Id. at "Statement of Claim" Section, p. 3, ¶ 2; p. 5, ¶ 7).

Upon admission to the Huntingdon County Prison inmates are provided with a handbook entitled "Huntingdon County Prison Inmate Handbook" (hereinafter, "Inmate Handbook"), which contains the prison rules and regulations. (Doc. 45, ¶ 5). Brown

acknowledged receipt of the Inmate Handbook. (Id. at 6). All levels of Misconduct and accompanying punishments are listed in the Inmate Handbook. (Id. at 7, 8). The Inmate Handbook also contains a description of the disciplinary process and the appeal process. (Id. at 8).

On June 18, 2016 an incident occurred that resulted in Brown being charged with multiple misconducts. (Id. at 12, 13). On that date, Brown was aggressive, uncooperative, and physically assaulted two a Corrections Officer and Defendant Weikert. (Doc. 43-1, p. 65). Following the incident Brown was transferred from the Main Cell Block to Holding Cell 1 in the Restrictive Housing Unit ("RHU"). (Doc. 45, ¶ 14). While in the holding cell, he "began shaking the gate and punching the light out. Inmate T. Brown punched out the Plexiglass and began shoving toliet [sic] paper in the light housing around the light bulbs. Inmate T. Brown [sic] hands were covered in blood from punching the light. CO Chilcote then called Nurse Watkins about Inmate T. Browns [sic] hands and was coming in to see him. C/O Rogers and Beale fixed the Plexiglass so that the holding cell T. Brown could be used. Inmate T. Brown was then placed back in Holding Cell 1." (Doc. 43-1, p. 65).

In the RHU, Brown's cell was next to the nurse's office. (Id. at 18). He was seen by medical staff on June 19, 2016, for treatment to abrasions on both hands and his right upper foot. (Doc. 43-1, p. 71). The areas were cleaned with peroxide and band aids were applied. (Id.) On June 23, 2016, Nurse Susan Watkins ("Nurse Watkins") was in her office and heard Brown yelling "I'm going to kill myself." (Id. at 73). Nurse Watkins asked Brown what was wrong and he responded "I'm gonna bang my head off the wall

5

and put blood all through the holding cell." (Id. at 71-73). Nurse Watkins's evaluation of Brown revealed a "small visible abrasion on the center of the head area." (Id.) She attempted to clean the abrasion. (Id. at 71). He refused treatment. (Id.) Nurse Watkins notified Defendant Black. (Id. at 71-73).

On June 23, 2016, Brown also met with the prison counselor. The counselor noted the following:

> Brown still confined to HC1. CO's reported he was/has been hitting head on the wall, throwing feces, urine & food in the cell. Met w/him in the booking room due to conditions. Discussed his behavior, head banging, broke the light, refusal to receive medical. He described refusing to eat, stated "I'm crazy, give me a break & send me out to be evaluated." When asked if doing/saying this for court purposes he smiled/laughed. Also discussed his flight/fight mode & he reports always being in fight mode. Discussed at length his decision making and (-) consequences associated w/that. After meeting w/him I observed him eating & he also allowed the nurse to "clean-up" his head.

(Id. at 74).

On June 29, 2016, Brown filed three separate grievances. In Grievance number 1137, he complained that his cell conditions violated his Eighth Amendment rights. (Doc. 43-1, p. 81). Specifically, he stated that he had no working toilet or running water for a week and that poor ventilation resulted in horrible odors and stale air. (Id.) The Review Board responded "that there was proper ventilation per state guidelines and the policy of the Huntingdon County Jail. Also you where [sic] showered the [sic] twice weekly as per state guidelines. As per guidelines and the policy of the Huntingdon County Jail that you where [sic] provided sufficient toilet facilities." (Id. at 80). In Grievance number 1138, he claimed that staff ignored his mental health issues and threats

6

that he was going to hurt himself and placed him back in the holding cell without providing him the proper medical attention. (Id. at 85). In response, the Review Board stated "[a]fter speaking with the jail counsler [sic] and medical, it is the findings of the Review Board that you where [sic] already segregated from the general population in Holding Cell 1, with a suicide smock, and a suicide mattress on fifteen minute checks. Mental health and medical where [sic] notified and you where [sic] seen. When medical tried to perform treatment on your forehead you refused. As documented by medical and the jail counsler [sic]. Also given suicide assessment by jail counsler [sic]. Continues to be seen by the jail counsler [sic]." (Id. at 84). Grievance number 1139 concerns the denial of recreation and being provided bag lunches instead of regular meals. (Id. at 89). The Review Board found that he "was given an alternative meal. As documented on reports, and continued to throw food and use his milk carton to throw water. As per your recreation, due to your aggressive behavior and recent staff assaults, you where [sic] a threat to the staff and security of the Huntingdon County Jail." (Id. at 88).

### III. Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Thus, § 1983 limits liability to persons who violate constitutional rights.

### A. Conditions of Confinement

Pretrial detainees are protected from "punishment" by the Due Process Clause of the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 (1979). To determine whether conditions of confinement amount to "punishment", courts "ask, first, whether any legitimate purposes are served by the [ ] conditions, and second, whether the [ ] conditions are rationally related to these purposes." Hubbard v. Taylor, 538 F.3d 229, 232 (3d Cir. 2008) ("Hubbard II") (citing Union Cnty. Jail Inmates v. Di Buono, 713 F.2d 984, 992 (3d Cir. 1983); see also Stevenson v. Carroll, 495 F.3d 62, 67 (3d Cir. 2007). "Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].' " Bell, 441 U.S. at 538, 99 S.Ct. 1861 (alteration in original) (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)).

Defendants have demonstrated that, during his confinement in the RHU holding cell, Brown had access to sufficient toilet facilities, was provided showers twice a week, and was housed in a cell with proper ventilation. There is no evidence establishing the existence of the conditions on which Brown's claim rests. As such, we cannot conclude that Brown was subject to any punishment in this regard. The party adverse to summary judgment must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). Brown has failed to meet his burden.

With respect to recreation, the record demonstrates that he was denied recreation privileges for a period of sixteen days due to "aggressive behavior" and "recent staff assaults." (Doc. 43-1, p. 88). The Third Circuit has recognized the following with regard to the maintenance of internal security:

> The Supreme Court repeatedly has emphasized that maintaining internal security and order in jails and prisons are "legitimate governmental objectives" and that courts must give prison officials considerable discretion to manage internal security in their institutions. See, e.g., Sandin v. Conner, 515 U.S. 472, 482-83, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) ("[F]ederal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment."); Hewitt v. Helms, 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) ("Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." (quoting Bell, 441 U.S. at 547, 99 S.Ct. 1861)), receded from on other grounds by Sandin, 515 U.S. at 482-83, 115 S.Ct. 2293; Bell, 441 U.S. at 561, 99 S.Ct. 1861 ("Ensuring security and order at the institution is a permissible non-punitive objective, whether the facility houses pretrial detainees, convicted inmates, or both."). Courts must afford such deference because "assessing the seriousness of a threat" requires

> officials to do more than simply take stock of the "specific facts surrounding a particular incident; instead, they must consider the character of the inmates confined in the institution, recent and longstanding relations between prisoners and guards, prisoners *inter se*, and the like." Hewitt, 459 U.S. at 474, 103 S.Ct. 864.

Steele v. Cicchi, 855 F.3d 494, 505 (3d Cir. 2017). It is clear that, in denying Brown recreation for approximately sixteen days, Defendants were ensuring the security and order of the institution, and, as such, the deprivation is permissive and non-punitive in nature.

Moreover, as noted in a recent non-precedential Third Circuit opinion, the temporary denial of recreation does not constitute a substantial deprivation. Barndt v. Wenerowicz, 698 F. App'x 673, 677 (3d Cir. 2017) (finding denial of recreation for twenty-eight days not a substantial deprivation) (citing, Pearson v. Ramos, 237 F.3d 881, 884 (7th Cir. 2001) (finding denial of yard privileges for no more than ninety days not cruel and unusual punishment); May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (finding "temporary denial of outdoor exercise with no medical effects is not a substantial deprivation"); Knight v. Armontrout, 878 F.2d 1093, 1096 (8th Cir. 1989) (finding denial of outdoor recreation for thirteen days not cruel and unusual punishment); French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985) (finding lack of exercise constitutes a constitutional violation "[w]here movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened")."

Defendants are entitled to an entry of summary judgment on this claim.

### B. Denial of Medical Care

To be thorough, the alleged denial of medical care will also be addressed. A pretrial detainee's claim for inadequate medical care is also adjudicated under the Due Process Clause of the Fourteenth Amendment. See Hubbard, 399 F.3d at 166. Pretrial detainees "are entitled to at least as much protection as convicted prisoners and [] decisions interpreting the Eighth Amendment serve as 'useful analogies.' " Boring v. Kozakiewicz, 833 F.2d 468, 472 (3d Cir. 1987) (quoting Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1080 (3d Cir. 1976)); see also Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003) (finding "no reason to apply a different standard than that set forth in Estelle (pertaining to prisoners' claims of inadequate medical care under the Eighth Amendment)"); In Inmates of Allegheny Cty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (concluding that "at a minimum, the 'deliberate indifference' standard of Estelle v. Gamble, must be met" at an institution housing pretrial detainees).

For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." Natale, 318 F.3d at 582 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Deliberate indifference has been found where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally

refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." Rouse, 182 F.3d at 197. Only egregious acts or omissions can violate this standard. See White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990).

Plaintiff names supervisory Defendants Warden Black and Lieutenant Weikert "[T]here are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." Santiago v. Warminster Twp., 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration marks omitted). Plaintiff's threadbare medical care claims against Black and Weikert are based on wholly conclusory legal allegations that fail to point to, or rely on, any policy, practice or custom. Further, there are no facts that these defendants affirmatively denied him adequate medical care through personal direction, or based on actual knowledge or acquiescence.

Additionally, the Third Circuit has held that prison officials who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir.1993). In Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004), the Third Circuit expanded upon its reasoning in Durmer, stating "[a]bsent a reason to believe (or actual knowledge) that prison doctors or

12

their assistants are mistreating (or not treating) a prisoner, a non-medical prison official will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Spruill, 372 F.3d 236. There is no evidence that these defendants had a reason to believe that Plaintiff was not being treated by medical personnel.

Lastly, inasmuch as Plaintiff attempts to impose liability on either defendant based on his complaints or grievances, allegations that prison officials and administrators responded inappropriately, or failed to respond to a prisoner's complaint or an official grievance, does not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct. See Rode, 845 F.2d at 1207-08 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006); see also Croom v. Wagner, No. 06-1431, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); Ramos v. Pennsylvania Dept. of Corrections, No. 06-1444, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement).

## IV. Conclusion

Based on the foregoing, Defendants' motion (Doc. 43) for summary is deemed unopposed and will be granted.

An appropriate Order will issue.

BY THE COURT:

s/James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court

**Dated:** July 9, 2018